**NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 7-17-2014

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * *
                                *
 UNITED STATES OF AMERICA       *
                                *   12-CR-130-01-SM
             v.                 *   March 4, 2014
                                *   10:05 a.m.
 FREDERICK V. MCMENIMEN, III    *
                                *
* * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE STEVEN J. MCAULIFFE

APPEARANCES:

For the Government:      William E. Morse, AUSA
                        U.S. Attorney's Office


For the Defendant:      Bjorn R. Lange, Esq.
                        Federal Defender's Office


Probation:              Jennafer McNutt
                        Jodie Gauvin


Court Reporter:         Susan M. Bateman, LCR, RPR, CRR
                        Official Court Reporter
                        United States District Court
                        55 Pleasant Street
                        Concord, NH 03301
                        (603) 225-1453

```
1                    P R O C E E D I N G S
2              THE CLERK:  Court is in session and has for
3    consideration a hearing on Attorney Bjorn Lange's
4    motion to withdraw in the matter of United States of
5    America versus Frederick McMenimen, case number
6    12-CR-130-01-SM.
7              THE COURT:  Mr. Lange, you didn't file this
8    motion under seal, did you?
9              MR. LANGE:  I did not.
10             THE COURT:  Are there any matters that are
11   going to come up that the government shouldn't be in
12   here?
13             MR. LANGE:  There may be parts of what we're
14   going to be talking about which are going to be
15   sealed, but generally I'm prepared to do a few
16   portions of this on the record.
17             THE COURT:  Okay.  All right.
18             MR. LANGE:  I'm moving to withdraw because I
19   don't think that Mr. McMenimen has gotten from me what
20   he should have gotten from me.  I went back
21   yesterday -- I've spent about 300 hours on this case.
22   I've been appointed for two years -- two years ago I
23   was appointed.  I should certainly be ready for trial
24   on March 18th, but I'm not.  It's not his fault.  It's
25   my fault.
```

1        I think part of what's going on is that --
2   April 1 is the -- early on -- I was appointed in March
3   and he wasn't indicted until October, and I talked
4   with him about submitting the documents which are the
5   subject of the in limine motion.  I don't know if
6   you've seen that motion.
7        THE COURT:  I have it, but I'm not sure why
8   that's a problem.
9        MR. LANGE:  Well, it's a problem because I
10  don't think I gave him adequate advice about the
11  implication of submitting those documents to the grand
12  jury.  I certainly should have counseled him more than
13  I did about that these records are a business records
14  exception and there needs to be a record keeper and so
15  forth.
16       THE COURT:  But I don't know where that
17  leaves it.  It's either admissible, it's not
18  admissible, it's genuine, it's not genuine, whatever.
19       MR. LANGE:  I've spent an awful lot of time
20  trying to follow up on that and subpoena witnesses in
21  support of the documents which may very well not be
22  admissible which would go to the heart of his defense.
23  He was entitled to know before he gave me the
24  documents the grand jury full implication of what I
25  was doing on his behalf, and I don't think --

1          THE COURT:  Again, I had a hard time
2    following that.
3          MR. LANGE:  He doesn't know the rules of
4    evidence.
5          THE COURT:  So what.  He doesn't have to.
6    What's the issue?  What's the problem?
7          MR. LANGE:  The issue is I don't think he was
8    fully advised by me about the ramifications of
9    submitting those documents to the grand jury.  If he
10   gets convicted, there's a very real chance there's
11   going to be an obstruction enhancement based on those
12   documents.  I played a part in that decision.
13         I can give explanations in terms of why I
14   probably didn't spend as much time with him as I
15   should have in terms of advising him on that point,
16   but the bottom line is he didn't get from me what he
17   should have got.
18         And more significantly, more recently I
19   haven't spent the kind of time that I should have
20   spent getting ready for trial.  I've invested a lot of
21   time on the motions which he may think are germane but
22   which are not and which -- I mean, I'll go into more
23   detail ex parte in terms of that.
24         It's not something he wanted.  It's a
25   decision that I made over about two weeks ago.

1            He's consulted with the acting Director of

2    the Federal Defender Program and has taken up his

3    concerns with them.  I'm not positive what his

4    position is, if he does want new counsel at this

5    point, but this is not his motion.  This is my motion.

6            THE COURT:  I have to tell you that reading

7    it -- trying to read it, trying to figure out what

8    you're actually trying to say, it struck me that Mr.

9    Morse is probably on the right track.

10           Should you be ready for trial?  Yeah, you

11    should.

12            MR. LANGE:  Yeah.

13            THE COURT:  Are you?  No.  I take you at your

14    word.  Why doesn't a little time solve that as opposed

15    to go back to square one with new counsel on a two

16    year old case?

17            MR. LANGE:  I don't think he has a great deal

18    of confidence in me because I don't think that I've

19    been sufficiently assertive early on in his

20    representation.

21            THE COURT:  It's the eleventh hour.  We can't

22    keep hopping off trains.  I mean, we've got to get the

23    case tried.

24            MR. LANGE:  He's never had other counsel.

25    I'm the only assigned lawyer in this case.

1          I think the difficulty is the timing of this

2   motion.  I have tried to work it out with him.  I

3   think last fall we had what I thought was a very

4   productive conversation, but I made representations to

5   him that I wasn't able to follow up on that I need to

6   disclose ex parte.  I think he wants to address the

7   Court as well.

8          THE COURT:  All right.  Do you want the

9   government here, Mr. McMenimen, or not?  It's probably

10  better not to have them --

11         THE DEFENDANT:  For the first part of it,

12  it's okay, for the ex parte part, all right, which

13  I'll read my little brief statement here, it may

14  become clearer.  It's up to you.

15         THE COURT:  Well, I don't know.  I have no

16  idea what you're going to do so the danger looms

17  large.  I mean, who knows what you're going to say,

18  you know.

19         MR. LANGE:  I've read it.  I don't think

20  there's anything there that implicates his defense.

21         THE COURT:  Okay.

22         THE DEFENDANT:  Thank you.  I appreciate you

23  giving me the opportunity to speak.  I feel it's

24  necessary for me to speak before you today because of

25  the tremendous amount of misinformation being reported

1 publicly and communicated to just the parties in this

2 matter.  Personal agendas, relationships in the press,

3 media manipulation, should have no part in this case

4 as it has.  So I would like this Court to hear

5 directly from me about this important matter in my own

6 words so that no one can speculate on the truth or my

7 agenda.

8          I would like to start out by saying that

9 Attorney Lange is a true professional.  For him to

10 come to me with this decision to withdraw I'm sure was

11 very difficult.  Admitting mistakes and looking out

12 for my best interest came first, and that says a lot.

13          After reflecting on his decision, listening

14 to all of his reasons and discussing it with my

15 family, I also feel it is best for all.

16          This was not my decision, and I did not ask

17 Attorney Lange to withdraw.  In fact, it came as quite

18 a surprise, and I would like to be clear on that as it

19 does not appear to be what's being told to interested

20 parties.  It is also something that I do not take

21 lightly.

22          I know that you and this court have concerns

23 about the delay this will cause.  I feel the same way.

24 I in no way want my family to have to continue with

25 this nightmare any longer than necessary.  We want to

1  start the process of rebuilding our lives when I am

2  found innocent.

3           I also feel for my friends and associates

4  that have been inconvenienced by this process, and

5  most of all I feel badly for my past clients.  They

6  did not ask to be involved in this, and I'm sure it

7  has been just as hard on them.  I just want for them

8  to be able to get on with their lives and understand

9  the truth and be comfortable and start the process of

10 healing.

11          Please allow me to inform this Court on what

12 has gone on behind the scenes as much as I can to

13 avoid the situation.  As you will hear, much

14 discussion has been spent on this matter in a very

15 short period of time.  If the Court wishes to explore

16 some of the issues ex parte, I would be glad to do so.

17          There are several issues not in the motion

18 that are discussed prior.  This includes several

19 reasons given to me by Attorney Lange that I choose

20 not to discuss here in open court.

21          As we all know, the budget crisis has created

22 issues in our legal system.  Especially in the Public

23 Defender's Office here in New Hampshire.  They've lost

24 attorneys, investigators and support staff.

25          For almost a year I have lobbied for

1  co-counsel to help out Attorney Lange with this
2  difficult case.  It fell on deaf ears above him due do
3  this crisis.
4      On the other hand, the prosecution seems to
5  have unlimited resources.  It's no wonder they have a
6  high success rate.  It's not a level playing field.
7  And Attorney Lange has not refuted those thoughts.
8      Almost a year ago I gave Attorney Lange
9  information that would help prove my innocence.  I
10  gave him names, information and where to find this
11  proof of innocence and help with my defense.  To date,
12  unfortunately, very few of these leads have been
13  followed up on.
14      When I came back from my diesel therapy trip
15  last summer, I again met with Attorney Lange and in
16  his limited time gave him additional information that
17  would end this case and my nightmare.  It was the same
18  information as the spring, plus some more.  He has
19  still, unfortunately, not had a chance to follow up on
20  most of them.
21      At that time he was waiting for my competency
22  hearing in November.  Before and after that hearing I
23  again had a brief meeting with Attorney Lange and
24  communicated additional information that could end
25  this case.

1          In fact, at the end of that hearing in

2    November Attorney Lange stated to this Court, I will

3    be presenting to the Court motions, including motions

4    to dismiss, within a couple of weeks.  To date that

5    has not been done.

6          Jumping ahead.  In early February I met with

7    Attorney Lange at his office along with his

8    investigator.  Sorry.  I don't remember his -- I know

9    his first name was Chase.  I don't remember his last

10   name.

11         We discussed an array of topics.  The

12   investigator was brand new to the office and had

13   limited or no knowledge of my case and stated so.  It

14   was like starting from scratch.

15         Again, I was concerned and asked for

16   co-counsel.  Attorney Lange strongly suggested I

17   contact the Boston office with that concern.  I didn't

18   do so right away.  I wanted to see if Attorney Lange

19   was going to be able to level the playing field.

20   Besides, co-counsel was my goal.

21         Finally, on February 18th I wrote a lengthy

22   letter to Attorney Lange and his superiors in Boston.

23   I was immediately put in touch with Attorney Charles

24   McGinty, who's a superior in Boston or acting chief.

25   He immediately invited me to his office.

1    Over the next few days we met in person and
2  spoke by phone from Thursday, February 18th, through
3  Monday, February 24th, including over the weekend.
4  That's how seriously they took it.
5    On Monday, the 24th, Attorney McGinty and
6  Attorney Lange called me for a meeting.  Within an
7  hour I drove to Attorney Lange's office and he made me
8  aware of his decision and why.
9    I was given two choices when I spoke with Mr.
10  McGinty:  To seek new counsel or talk to Attorney
11  Lange.  I was choosing to go forward with Attorney
12  Lange to expedite the trial until he told me of his
13  decision and all of his reasons.
14    He told me he had agonized all weekend and
15  not slept much, but he felt badly and had no choice.
16  Some, but not all, of his reasons are in the motion to
17  withdraw.
18    We sat and discussed this for 45 minutes, and
19  he told me whether I consented or not he was filing a
20  motion to withdraw.  He stated I deserved better.  I
21  was very surprised, but I appreciated his candor in
22  watching out for my best interests.
23    I am aware of the prosecution's concerns.  I
24  know this delay makes it hard on everyone, and I agree
25  with it but I really have no choice.

1          Please also let me remind the Court that the

2     last delay was not caused by the defense.  It was

3     requested by the prosecution team to accommodate

4     personal family matters of two persons.

5          However, the prosecution in its objection

6     brings up one concern that I would like to discuss

7     directly, and that is communication.  We have no

8     problem with communication.  Attorney Lange and I have

9     never had that problem.  There are hundreds of

10    privileged e-mails and calls to back this up.  I

11    believe it was taken out of context by the

12    prosecution.

13         I believe that what Attorney Lange meant was

14    that he felt I needed someone to work with me who

15    could discuss and communicate the choices and concerns

16    that Attorney Lange and I have discussed and his

17    decision to withdraw and all of the reasons, besides

18    what's in the motion, that have caused it.  That

19    outside counsel could then act and resolve this case

20    and put us all on a level playing field.

21         In closing, I thank you for your time.  I

22    understand now why Attorney Lange is withdrawing, and

23    it is best for all parties.  His continuance would

24    only make further delays.

25         After further discussion of this matter with

1    other confidants of mine, all agree that it's just not

2    possible after Attorney Lange's private admissions.

3    At this point there's no way we could go forward

4    together.  In fact, I think his withdrawal will

5    actually expedite the process.

6             I'm not upset with Attorney Lange.  He is

7    looking out for my best interests, and I so appreciate

8    his professionalism.

9             I commit to you, as I have on other matters,

10   that when new counsel is assigned I will dedicate

11   whatever time is needed to get up to speed and have

12   them expedite the process.

13            Time to prepare properly and have the proper

14   defense is my right, and I think it's sooner and

15   better for all.

16            I respectfully submit that to the Court.

17            THE COURT:  Mr. Morse.

18            MR. MORSE:  Your Honor, I'll keep this brief.

19   I stated the government's position in my objection to

20   the motion, and I think the Court has focused on my

21   primary points.

22            The case has been pending for quite awhile.

23   He was indicted 18 months ago.  The defense has had

24   discovery since several months before indictment.

25            I conducted a reverse proffer with Attorney

1    Lange in August of 2012.  We've gone to the brink of
2    trial on at least a couple of occasions only to have
3    the trial continued.
4           I know that this case has presented a lot of
5    challenges to Attorney Lange in trying to fashion and
6    put together a defense, and I'm sympathetic to his
7    circumstances.  And I want to offer every available
8    and reasonable accommodation to Attorney Lange, but at
9    the same time I don't want to cause any undue further
10   delay.
11          There are elderly victims in this case.  They
12   have been deprived of their life savings by the
13   defendant.  They are understandably anxious to see
14   justice done in this case.  The events underlying the
15   indictment go back as far as six years now, and no
16   one's memory is going to get any better than it is
17   today.
18          As for any -- Mr. Lange's position that he
19   should be allowed to withdraw because he gave
20   deficient advice, that advice has already been
21   rendered and it's already been acted upon.
22   Appointment of new counsel is not going to undue the
23   advice or undue the actions that were taken in
24   reliance on it; nor will it eliminate any post-trial
25   issues the advice may already have created.

1              To the extent Attorney Lange has expressed
2    trouble focusing the defendant on the relevant issues
3    in the case, there's no assurance that any new counsel
4    would be able to do any better.  In fact, Mr. Lange,
5    as the Court is aware, is one of the most experienced
6    and most effective counsel available in this court to
7    indigent clients.  He's done well with many, many
8    difficult clients in the past, and I think --
9              THE COURT:  You know, I'm with you on all of
10   those issues.  I'm not ready.  Well, it's nothing to
11   be proud of, but that's curable by a continuance.
12             MR. MORSE:  Exactly, your Honor.  I think all
13   the issues that Mr. Lange --
14             THE COURT:  Wait.  You didn't let me finish.
15             MR. MORSE:  I'm sorry?
16             THE COURT:  But you didn't let me finish.
17             MR. MORSE:  Oh, I'm sorry.
18             THE COURT:  So, you know, I'm with you on all
19   of those.
20             He seems to be saying -- I don't see it, but
21   he seems to be saying, oh, ineffective assistance.
22             MR. MORSE:  Right.  But I don't think --
23             THE COURT:  I need to withdraw.  I'm not sure
24   what the ineffective assistance is, but ineffective
25   assistance seems to be what he's saying.  I suppose we

have to take that up ex parte.

           MR. MORSE:  Well, I discern -- maybe I infer
two types of ineffective assistance.  One was the
advice that was rendered in connection with the
production of documents to the grand jury, and one was
in connection with his readiness for trial.  And I
guess my point is that neither of those deficiencies,
if there are in fact deficiencies like that, are going
to be cured by the appointment of new counsel.

           I think that the first issue about producing
documents -- you know, the advice that was given in
connection with the document production, that's water
under the bridge and it can't be undone by new counsel
or by a continuance.

           But with respect to the second issue about
readiness for trial, I think the best way to address
that would be by a continuance.  Not a long one.  I
don't think we need a long continuance, but 30 or 60
days should be plenty of time to get this case ready
for trial.

           I know the defendant hasn't moved for a
continuance, but the Court does have the authority to
order one under 18 USC Section 3161 because the ends
of justice in this case -- the ends of justice will be
better served -- the ends of justice served by the

granting of a continuance would substantially outweigh
the parties' and the public's interest in a speedy
trial, and that's 3161(c)(7), I believe.

So for those reasons, your Honor, we oppose
the defendant's request for withdrawal and propose
that instead the Court grant a short continuance of 30
to 60 days.

THE COURT:  All right.  Thank you, Mr. Morse.

All right.  Should we take up the matters ex
parte?  I would ask the courtroom to be cleared then.

(COURTROOM IS CLEARED)

(THIS PORTION OF THE RECORD IS ORDERED SEALED
BY THE COURT)

(ATTORNEY MORSE RETURNS TO COURTROOM)

THE COURT:  All right.  Mr. Morse, you know,
it's an unfortunate situation.  My hands are pretty
much tied.  He's not prepared to go to trial.  The
defendant is entitled to counsel that's prepared to go
to trial.

Based on our ex parte conversations and based
upon the argument made earlier, I just don't see any
other basis for a claim that withdrawal is justified
at this late date in this prosecution, and I'm not
going to allow withdrawal.

Again, I think I understand the basis.  I

1    don't hear anything other than, I'm not prepared, I
2    should be prepared.  That's curable by a continuance.
3             I don't think 60 days is going to do it.  I'm
4    going to give him till August.  We'll try it in
5    August.
6             I'm going to appoint co-counsel from the CJA
7    panel to assist Mr. Lange and Mr. McMenimen.  So I
8    guess it's -- what is it, an August 19th trial?
9             THE CLERK:  It is.
10            THE COURT:  I don't know what the Speedy
11   Trial Act implications are.
12            MR. MORSE:  Your Honor, by my calculations 68
13   days have run under the Speedy Trial Act, but of
14   course now all this time would be tolled so --
15            THE COURT:  Well, do you have any
16   disagreement about that, Mr. Lange?  It seems to me
17   that -- you haven't filed a request for a continuance,
18   but it seems to me it's implicit in that you claim
19   that you're not prepared and you need more time.
20            MR. LANGE:  Yes, your Honor.  I think it is.
21            THE COURT:  All right.  Okay.  And I
22   determine that the time between the trial date
23   scheduled and the newly assigned trial date is not
24   countable time under the Speedy Trial Act because it's
25   (a) for the defendant's benefit, (b) at the

1  defendant's implicit if not specific request, and it's

2  necessary to provide the defendant with an adequate

3  defense under the circumstances.

4          Substituting counsel would require at least

5  another year to try the case, and with the assistance

6  of supplemental counsel the case should be ready to

7  go.

8          MR. MORSE:  Your Honor, can I ask the Court

9  just to make an explicit finding that the ends are

10 served by the continuance?

11         THE COURT:  Yes.

12         MR. MORSE:  And the need for a speedy trial

13 outweigh the parties' rights to a speedy trial?

14         THE COURT:  Yes.  Granted.

15         Judy, if you would just make the statutory

16 finding in that order as well.

17         THE CLERK:  I will.

18         THE COURT:  Okay.  All right.  Court's

19 adjourned.

20         (Conclusion of hearing at 10:50 a.m.)

21

22

23

24

25

```
 1              C E R T I F I C A T E

 2

 3

 4         I, Susan M. Bateman, do hereby certify that the

 5    foregoing transcript is a true and accurate

 6    transcription of the within proceedings, to the best of

 7    my knowledge, skill, ability and belief.

 8

 9

10    Submitted:  4-18-14
                               SUSAN M. BATEMAN, LCR, RPR, CRR
11                             LICENSED COURT REPORTER, NO. 34
                               STATE OF NEW HAMPSHIRE
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```