U.S. DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

OCT 3 1 2014

FILED

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA )
)
v. )        Criminal Case No. 12-CR-00130-SM
)
FREDERICK V. MCMENIMEN, III )

### PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(A) and (C) of the Federal Rules of Criminal Procedure, the United States of America by its attorney, John P. Kacavas, the United States Attorney for the District of New Hampshire, and the defendant, Frederick V. McMenimen, III, and the defendant's counsel, William E. Christie, Esquire, and Bjorn R. Lange, Esquire, enter into the following Plea Agreement:

1. **The Plea and The Offense**.

The defendant agrees to plead guilty to the following counts in the Indictment: Count Four charging Mail Fraud, in violation of 18 U.S.C. § 1341, Count Twenty-Seven charging Money Laundering in violation of 18 U.S.C. § 1957, and Counts Twenty-Nine through Thirty-One charging Tax Evasion in violation of 26 U.S.C. § 7201. The defendant further agrees to the sentencing stipulations set forth in Paragraph 6 of this agreement. In exchange for the defendant's agreement to those stipulations and his guilty plea, the United States agrees to the sentencing stipulations described in Paragraph 6 and, upon sentencing, to dismissal of Counts One through Three, Counts Five through Twenty-Six and Count Twenty-Eight of the Indictment.

2. **The Statute and Elements of the Offense**.

    A.    Mail Fraud

Title 18, United States Code, Section 1341 provides, in pertinent part, as follows:

1

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises, … for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by private or commercial interstate carrier, … or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is address, any such matter or thing, shall [be guilty of a crime].

18 U.S.C. § 1341 (West 2014).

The defendant understands that the offense of Mail Fraud in violation of 18 U.S.C.

§ 1341 has the following elements, each of which the United States would be required to prove

beyond a reasonable doubt at trial:

First, a scheme, substantially as charged in the indictment, to defraud or to obtain money or property by means of false or fraudulent pretenses;

Second, the defendant's knowing and willful participation in that scheme with the intent to defraud or to obtain money or property by means of false or fraudulent pretenses; and

Third, the use of the United States mail, on or about the date charged, in furtherance of the scheme.

First Circuit Pattern Jury Instructions, Criminal Cases, Part 4, § 4.12 (1998).

       B.    Money Laundering

Title 18, United States Code, Section 1957, provides, in pertinent part, as follows:

(a) Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from a specified unlawful activity [which includes Mail Fraud in violation of 18 U.S.C. § 1341], shall be [guilty of a crime].

\*     \*     \*

(d) The circumstances referred to in subsection (a) are --- (1) that the offense under this section takes place in the United States.

18 U.S.C. § 1957 (West 2014).

2

The defendant understands that the offense of Money Laundering in violation of 18 U.S.C. § 1957 has the following elements in the context of this case, each of which the United States would be required to prove beyond a reasonable doubt at trial:

> First, that the defendant deposited over $10,000 in a financial institution affecting interstate commerce on the date specified;
>
> Second, the defendant knew that the deposit came from some kind of criminal offense; and
>
> Third, the deposit was in fact criminally derived from Mail Fraud in violation of 18 U.S.C. § 1341.

First Circuit Pattern Jury Instructions, Criminal Cases, (Hornby), § 4.18.1957 (2005).

### C.    Tax Evasion

Title 26, United States Code, Section 7201, provides in pertinent part as follows:

> Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a [crime].

26 U.S.C. § 7201 (West 2014).

The defendant understands that the offense of Tax Evasion in violation of 26 U.S.C. § 7201 has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

> First, that the defendant owed substantially more federal income tax for the year than was indicated as due on his income tax return for that year;
>
> Second, that the defendant intended to evade or defeat the assessment or payment of this tax;
>
> Third, that the defendant willfully committed an affirmative act in furtherance of this intent; and

3

Fourth, that the defendant did not have a good-faith belief that he was complying with the provisions of the tax laws.

First Circuit Pattern Jury Instructions, Criminal Cases, Part 4, §4.25 (1998).

### 3. **Offense Conduct**.

The defendant stipulates and agrees that if this case proceeded to trial, the government would prove each of the essential elements of the offenses beyond a reasonable doubt by establishing the following facts:

From approximately September 2007, to November 2011, McMenimen, was employed by Prudential Securities, Inc., as a financial consultant and the manager of its Portsmouth, N.H., branch office. Before his employment at Prudential, McMenimen was self-employed as a financial planner, operating as Custom Financial LLC.

Beginning in approximately September 2008, McMenimen fraudulently solicited more than $1 million in purported investments from certain of his financial advisory clients. Each of the clients was an elderly widow whose family had long-standing personal relationships with McMenimen's family. Each was an unsophisticated investor and placed great trust in McMenimen to handle their financial affairs with little or no oversight on their parts.

McMenimen advised each client to liquidate existing annuities or other investments, to deposit the proceeds in their checking accounts and to then write checks payable to "PSB." In most instances, McMenimen caused the clients to write those checks by falsely leading them to believe that PSB was another investment vehicle that was better for them than their existing annuities. In actuality, PSB was a shorthand reference to a defunct retail sporting goods business, PSB Sports LLC, that McMenimen had once owned and operated. Between approximately September 8, 2008, and October 2011, McMenimen fraudulently induced the clients to write twenty-three checks payable to PSB in the aggregate estimated amount of $1,383,000.

McMenimen deposited the checks into a bank account he maintained in the name of PSB. He then used those funds to purchase official bank checks which he directly or indirectly deposited into another bank account – a checking account -- maintained in a relative's name at an FDIC insured financial institution. The relative in whose name the account was maintained provided McMenimen with several books of pre-signed but otherwise blank checks, thereby affording McMenimen complete access to the fraudulently obtained funds. McMenimen used the funds for his personal benefit.

Despite expending all of the proceeds on personal expenses, McMenimen did not record any of the fraudulently obtained funds as income on the tax returns he filed for tax years

4

2008, 2009 and 2010. The following table reflects the amounts of taxable income McMenimen actually reported on his return for each of the tax years and the amount of his actual taxable income, including the fraudulently obtained funds.

| TAX YEAR | REPORTED TAXABLE INCOME | CORRECTED TAXABLE INCOME |
|---|---|---|
| 2008 | $   61,119 | $   173,794 |
| 2009 | $   61,458 | $   459,211 |
| 2010 | $   45,388 | $   507,031 |
| TOTAL | $   167,965 | $ 1,140,036 |

Because McMenimen underreported his income, his tax returns reflected a tax due and owing that was substantially less than his true tax liability.

4. **Penalties, Special Assessment and Restitution**.

The defendant understands that the penalties for the offense are:

A.   For Count Four, a  maximum prison term of 20 years (18 U.S.C. § 1341), for Count Twenty-Seven, a maximum prison term of ten years (18 U.S.C. § 1957) and for each of Counts Twenty-Nine through Thirty-One, a maximum prison term of five years (26 U.S.C. §  7201).

B.   For each count of conviction, a maximum fine of $250,000 or not more than twice the gross gain to the defendant (18 U.S.C. §3571).

C.   For each count of conviction, a term of supervised release of not more than 3 years. The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release. (18

5

U.S.C. §§ 3559 and 3583).

The defendant also understands that he will be required to pay a special assessment of $500, $100 for each count of conviction, at or before the time of sentencing; and that the Court may order him to pay restitution to the victim of the offense, pursuant to 18 U.S.C. § 3663 or § 3663A.

5. **Sentencing and Application of the Sentencing Guidelines**.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines.  The defendant further understands that he has no right to withdraw from this Plea Agreement if the applicable advisory guideline range or his sentence is other than he anticipated, except as provided herein.

The defendant also understands that the United States and the United States Probation Office shall:

A.    Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

B.    Respond to questions from the Court;

C.    Correct any inaccuracies in the pre-sentence report;

D.    Respond to any statements made by him or his counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range under the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise as to the actual sentencing range under the advisory

6

Sentencing Guidelines that the Court will adopt.

     6. **Sentencing Stipulations and Agreements**.

        Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the government and the defendant agree that the appropriate term of imprisonment on all counts is forty-two months. Neither party will recommend a sentence that includes any other total term of imprisonment.

        The parties intend the above stipulation to be "binding" under Fed. R. Crim. P. 11(c)(1)(A) and/or (C). By using the word binding the parties mean that if the Court will not accept the plea agreement under Fed. R. Crim. P. 11(c)(3)(A), the plea agreement is null and void and the defendant will be allowed the opportunity to withdraw his guilty plea.

        Under Fed. R. Crim P. 11(c)(1)(B), the parties further agree to recommend that the defendant's sentence include an order requiring him to make full restitution to the following individuals:

    1.     S.W. of Hampton Falls, N.H., in the amount of $ 968,500.

    2.     J.B. of Merrimack, N.H., in the amount of $185,000.

    3.     P.M. of Manchester, N.H., in the amount of $230,000.

The restitution amounts shall be offset by any civil or arbitration awards (net of attorneys fees and costs) obtained from third parties for damages arising from the conduct outlined in the indictment.

        Also under Fed. R. Crim P. 11(c)(1)(B), the parties further agree that, if a term of supervised release or probation is imposed, the following conditions are appropriate:

        a.     the defendant shall file amended or original individual income tax returns with the Internal Revenue Service for tax years 2008, 2009, and 2010 and timely file truthful individual income tax returns with the IRS that are due during the term of supervised release or probation; and

7

b.    the defendant shall cooperate fully with the IRS in the ascertainment, computation and payment of his true federal income tax liabilities for tax years 2008, 2009 and 2010, with such cooperation to include:

    (1)    providing to the IRS all financial information necessary to determine the defendant's tax liabilities for those years and his current financial ability to pay;

    (2)    consenting to the disclosure to the IRS's Examination and Collection Divisions all information relating to the defendant's financial affairs in the possession or custody of the United States, including grand jury materials otherwise protected by Rule 6(e) of the Federal Rules of Criminal Procedure; and

    (3)    making a good faith effort to pay all delinquent and/or additional taxes, interest and penalties, including the payment of such taxes stemming from the offense conduct and relevant conduct in a lump sum, should the IRS determine he is financially able to make such a lump sum payment, or entering into an agreement to pay such taxes stemming from the offense conduct and relevant conduct by installments during the term of supervised release.

The United States and the defendant are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

7. **Acceptance of Responsibility**.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

A.  Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

B.  Challenges the United States' offer of proof at any time after the plea is entered;

C.  Denies involvement in the offense;

D.  Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

E.  Fails to give complete and accurate information about his financial status to the Probation Office;

F.  Obstructs or attempts to obstruct justice, prior to sentencing;

G.  Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

H.  Fails to appear in court as required;

I.  After signing this Plea Agreement, engages in additional criminal conduct; or

J.  Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any of the reasons listed above, the United States does not recommend that he receive a reduction in his sentence for acceptance of responsibility.

9

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

8. **Waiver of Trial Rights and Consequences of Plea**.

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.  The defendant also understands that he has the right:

A.      To plead not guilty or to maintain that plea if it has already been made;

B.      To be tried by a jury and, at that trial, to the assistance of counsel;

C.      To confront and cross-examine witnesses;

D.      Not to be compelled to provide testimony that may incriminate him; and

E.      To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of his guilty plea, he will not be entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers will be used against him in a prosecution for perjury or making false statements.

9. **Acknowledgment of Guilt; Voluntariness of Plea**

The defendant understands and acknowledges that he:

    A.    Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

    B.    Is entering into this Plea Agreement without reliance upon any promise of benefit of any kind except as set forth in this Plea Agreement;

    C.    Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

    D.    Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

    E.    Is completely satisfied with the representation and advice received from his undersigned attorney.

10. **Scope of Agreement**.

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority. The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from his guilty plea. The defendant understands such matters are solely within the discretion of the specific non-party government agency involved. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11. **Collateral Consequences**.

   The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

12. **Satisfaction of Federal Criminal Liability; Breach**.

   The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal liability in the District of New Hampshire arising from his participation in the conduct that forms the basis of the Indictment in this case.  The defendant understands that if, before sentencing, he violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails to appear for sentencing, the United States may consider such conduct to be a breach of the Plea Agreement and may withdraw therefrom.

13. **Waivers**.

**A. Appeal**.

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal.  By entering into this Plea Agreement the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

  1.  His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and

  2.  The sentence imposed by the Court if that sentence is the stipulated sentence or within the stipulated sentencing range specified in section 6 of this agreement.

   The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

B. **Collateral Review**

The defendant understands that he may have the right to challenge his guilty plea and/or

sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255. By

entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to

collaterally challenge:

1.    His guilty plea, except as provided below, and any other aspect of his
      conviction, including, but not limited to, adverse rulings on pretrial
      suppression motion(s) or any other adverse disposition of pretrial motions
      or issues; and

2.    The sentence imposed by the Court if that sentence is the stipulated sentence or
      within the stipulated sentencing range specified in section 6 of this agreement.

The defendant's waiver of his right to collateral review does not operate to waive a

collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on

the ground of ineffective assistance of counsel. The defendant's waiver of his right to collateral

review also does not operate to waive a collateral challenge based on new legal principles

enunciated in Supreme Court or First Circuit case law decided after the date of this Plea

Agreement that have retroactive effect.

C.    **Freedom of Information and Privacy Acts**

The defendant hereby waives all rights, whether asserted directly or through a

representative, to request or receive from any department or agency of the United States any

records pertaining to the investigation or prosecution of the case(s) underlying this Plea

Agreement, including without limitation any records that may be sought under the Freedom of

Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D.    **Appeal by the Government**

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the

Government pursuant to pursue an appeal s authorized by law.

14. **No Other Promises**.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

15. **Final Binding Agreement**.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

16. **Agreement Provisions Not Severable.**

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

JOHN P. KACAVAS
United States Attorney

Date: <u>October 31, 2014</u>          By:     William E. Morse
Assistant U.S. Attorney
53 Pleasant St., 4th Floor
Concord, NH 03301
(603) 225-1552

The defendant, Frederick V. McMenimen, III, certifies that he has read this *15*-page Plea Agreement and that he fully understands and accepts its terms.

Date: <u>October 30, 2014</u>

Frederick V. McMenimen.III, Defendant


I have read and explained this *15*-page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date: <u>October 30, 2014</u>

William E. Christie, Esquire
Attorney for Frederick V. McMenimen, III

15