IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA ] | |
| ] | |
| v.       ] | Cr. No. 12-Cr-130-SM |
| ] | |
| FREDRICK V. McMENIMEN III ] | |

**<u>DEFENDANT'S SENTENCING MEMORANDUM</u>**

Defendant Frederick V. McMenimen III respectfully submits through counsel this memorandum in support of a sentence which includes forty two (42) months in the custody of the Bureau of Prisons (BOP) with a recommendation that he serve that sentence at FMC Devens, restitution to the victims, and three years of supervised release.

On October 31, 2014 McMenimen appeared before the Court and pursuant to Fed. Rule Crim. Proc. 11(c)(1)(C), pled guilty to mail fraud (Count 4), money laundering (Count 27), and three counts of income tax evasion (Counts 29-31). The parties stipulated that 42 months would be an appropriate term of imprisonment. Sentencing is scheduled for February 11, 2015.

**A. Potential Guidelines Issue**

McMenimen has no prior arrests or convictions, so that his total criminal history score is zero, putting him in Criminal History Category I. *Revised Presentence Investigation Report of 1/28/15* ("*PSR*"), *Paragraphs 57 - 62*. The parties do not dispute the offense level calculations in Paragraphs 26 through 52.

The only disputed guidelines-related issue is whether the Court should consider the government's declining to file a motion pursuant to U.S.S.G. § 3E1.1(b) to reduce the total offense level from 26 to 25 based on McMenimen's timely acceptance of responsibility. That subsection provides:

1

>   If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

Although Subsection (b) requires the government to file the motion for the additional one level acceptance reduction, the Court can and should consider whether the circumstances in this case support a U.S.S.G. § 5K2.0 downward departure or non-guideline variance to reduce the total offense level from 26 to 25.  See *PSR Paragraphs 22, 52 and 53.*

>   The following chronology appears undisputed:
>
>   Months prior to the return of the instant indictment on October 3, 2012 through AFPD Lange, who was appointed on 3/14/12, McMenimen offered to plead guilty to tax evasion but not to fraud or money laundering.  That offer was rejected.
>
>   On 9/14/12 in response to a grand jury subpoena Lange delivered to the government copies or originals of agreements between McMenimen and each of the three victims concerning compensation for his services and thereby indicating that their payments to him were not induced by fraud.   The government responded *inter alia* that the victims' signatures were forged.  See Motion in Limine, *Docket Entry 55*, filed 2/21/14.
>
>   On 6/12/13 McMenimen was found temporarily incompetent to stand trial and committed to BOP custody.  He was found competent on 10/15/13.
>
>   On 2/24/14 Lange moved to withdraw due in part to his delivering to the government prior to indictment the agreements which the government challenged as forgeries. *Document 56.*  On 3/4/14 the Court denied the motion but ordered that co-counsel be appointed.  *Document 58.*
>
>   On 3/13/14 Attorney Christie accepted appointment as co-counsel for McMenimen.
>
>   In July and again in September of 2014 Christie proposed to the government a plea to the tax counts with an enhanced sentence between the tax guidelines and the fraud guidelines. These proposals never got off the ground for a variety of reasons.
>
>   On 9-9-14 the government e-mailed Christie its guideline calculation and essentially proposed a Rule 11(c)(1)(C) plea to 72 months in BOP custody.  The offer also required an "unsparing" recitation of facts, including that McMenimen forged the documents

submitted in September of 2012, thereby triggering the obstruction enhancement in U.S.S.G. § 3C1.1.  McMenimen rejected that construct.

On 10/15/14 the government properly disclosed to the defense that an FBI document examiner concluded that the victims' signatures on the original copies of the disputed agreements were in original ink and not forged.  The disclosure of the examiner's supplemental report on10/16/14 prompted plea negotiations to begin anew. Thereafter there were multiple discussions and e-mails between the government and the defense.

· On 10/30/14, the government, Christie, and McMenimen reached an agreement to a C Plea of 42 months.

Notably, the last paragraph of Section 7 of the Plea Agreement specifically references U.S.S.G. § 3E1.1(b) and states that if McMenimen timely notifies the government of his intention to enter a plea, thereby permitting it to allocate its resources efficiently, it will move at or before sentencing to decrease his base offense level by one  additional level.

On the morning of 10/31/14 McMenimen appeared before the Court and pled guilty to mail fraud, money laundering, and tax evasion.

McMenimen's agreement to pled guilty within fourteen days of the government reconsidering its earlier position that he had proffered documents with forged signatures and his unwavering willingness to accept responsibility for tax evasion constitute timely notification of his intention to enter a plea, consistent with the evident policy of U.S.S.G. §  3E.1.1(b) to facilitate non-trial disposition of criminal cases.   The Court should implement that policy by adjusting the applicable sentencing guideline range (GSR) accordingly.

**B.  The sentence agreed to by the parties would be sufficient but not greater than necessary to comply with the purposes of sentencing as set forth in 18 U.S.C. §  3553(a).**

United States v. Booker, 543 U. S. 220, 125 S. Ct 738 (2005), Gall v. United States, 552 U.S. 38, 128 S. Ct. 586 (2007), Kimbrough v. United States, 128 S. Ct. 558 (2007), and 18 U.S.C. § 3553(a) require the Court to consider the nature and circumstances of the offense and the history and characteristics of the defendant and to impose a sentence which is sufficient but not greater than necessary to comply with the enumerated purposes of sentencing.  Upholding a non-guideline sentence well below the GSR,  Judge Selya wrote for the First Circuit Court of

Appeals that post-Gall, "A sentencing court should not consider itself constrained by the guidelines to the extent that there are sound, case-specific reasons for deviating from them. Nor should a sentencing court operate in the belief that substantial variances from the guidelines are always beyond the pale." United States v. Martin, 520 F.3rd 87, 91 (1st Cir. 2008).

**1. The Offense Conduct**

The undisputed offense conduct is outlined in Paragraph 3 of the written Plea Agreement. *Docket Entry 79*. Between about September of 2008 and November of 2011 McMenimen, an experienced and trusted financial advisor, solicited over one million dollars in purported investments from three elderly, financially unsophisticated clients. He led them to believe that checks payable to "PSB" were for investments on their behalf, rather than payments to a defunct sporting goods business. He deposited the checks into a bank account that he maintained in the name of PSB, transferred money from that account to others that he controlled, used the proceeds for himself and on behalf of his unwitting wife and their three sons, and failed to report that income on his federal tax returns for tax years 2008, 2009, and 2010. As he acknowledged in the Plea Agreement and at the change of plea hearing, he thereby committed the offenses alleged in Counts 4, 27, and 29 through 31. That misconduct warrants commensurate punishment. The agreed sentence is commensurate punishment for a 53 year old man with no prior convictions, who supported his family, who was a well-regarded coach and member of his community, who has significant acute and chronic medical conditions, who has suffered depression, and whose admitted criminal conduct has cost him his career as a financial advisor, his status as a baseball and hockey coach, and the respect of many former friends, relatives, colleagues, and clients.

**2. McMenimen's History and Characteristics**

McMenimen's chronic and acute medical conditions are detailed in Paragraphs 69 and 70 of the PSR and in a supplemental letter that counsel e-mailed to the probation officer and the government on February 5, 2015.  They support a judicial recommendation that McMenimen be housed at FMC Devens, so that the cause or causes of his current problems can be diagnosed and treated and so that family members, one of whom is not well, may be able to visit him.

The Presentence Investigation Report supports a recommendation that the BOP determine whether McMenimen should be placed on antidepressant medication.  *PSR Paragraph 73.*

McMenimen has worked hard all his life.  *PSR Paragraphs 65 and 76.*  A life-long hockey player and coach, he started working at a local ice arena when he was eleven.  He also mowed lawns and delivered newspapers to support his participation in hockey.  He played hockey for Arlington (MA) Catholic High School, where he obtained his diploma in 1980.  His team was Massachusetts State Hockey Champion in 1978 and a finalist in 1979.  He enrolled at Assumption College, where played on the varsity hockey team in 1981, 1982, and 1983.  He was Assumption College Rookie of the Year for the 1981-1982 season.  While in college he began working for Coca-Cola.  He was a Coca-Cola Representative of the Year in 1983, 1984, and 1986.  After completing two years in accounting at Assumption College, he withdrew to take a position with Coca Cola in North Carolina.

 In 1986 McMenimen married Shauna.  They returned to Massachusetts, where he became an insurance representative for John Hancock.  The company repeatedly recognized his professional accomplishments, including the following:

   *John Hancock National Honor Club 1990 (26th Nationally for new reps)
   • John Hancock National Honor Club 1991, 1992
   • John Hancock National Managers Recognition Award 1993 (26th Leading Sales
                                                                                            Manager)

    • John Hancock National Managers Recognition Award 1994 (6th Leading Sales Manager)
    • John Hancock National Managers Recognition Award 1995 (Platform Speaker)
    • John Hancock Architect of Success Awards 1990 - 1995
    • Leading Registered Representative 1993
    • George Scanlon Registered Representative Award John Hancock Distributors 1994

  In 1996 McMenimen left John Hancock but continued his success in the financial services industry, authorized to sell insurance policies and other investment vehicles for various major insurance companies. He was Director of Sales and Marketing for Copley Financial Group from September of 1999 to November of 2000. He did business as Custom Financial LLC from 2000 until 2007, when he took a position as Manager, Financial Services in Prudential Financial's Greater New England Agency. He initially did well at Prudential but conflicts with a supervisor and an internal investigation led to him being placed on paid administrative leave on August 5, 2011. He voluntarily resigned on October 7, 2011.

  McMenimen has coached hockey for some thirty years. He coached the Exeter High School teams from 1998 to 2008. For twenty years he was a Master Level Coach and an accredited instructor for USA Hockey. He passed his passion for the sport on to his three sons. He coached Little League Baseball in Exeter for eleven seasons and was an all-star coach eight times.

  McMenimen coached at the Special Olympics in Exeter for twenty years. He and his family donated to the Special Olympics, the Jimmy Fund, and local youth groups.

  McMenimen retains strong support from some family members. *PSR Paragraph 63.* Although they have lost a lifetime of savings and their marital home, his wife of over 28 years remains committed to their marriage and told the probation officer "that she is doing better emotionally as there is closure to his case." *PSR Paragraph 68.*

It is a credit to McMenimen and Shauna as parents that their three sons, now 25, 23 and 19, have achieved scholastic and athletic success.  *PSR Paragraph 66.*  The oldest was an Honorable Mention All-State when he played football for Exeter High School and now coaches football at a nearby college.  The other two are currently enrolled in college.  One was in the National Honor Society when he was in prep school, is a three year captain of his college hockey team, and was selected to the All New England Academic Team.  The other was All New England in prep school hockey and plays varsity hockey in college.

As detailed in the Presentence Report, between October of 2011 and September of 2013 McMenimen's life was in turmoil.  He was indicted, lost his Massachusetts and New Hampshire licenses to sell insurance, had a serious falling out with his biological father, and was committed briefly to a BOP facility for a competency evaluation.  He faced harsh media coverage.  That after release from the BOP he took whatever jobs he could get and did stressful but honest work until shortly before he surrendered himself to the custody of the marshal on December 1, 2014, *PSR Paragraph 76*, and that he did so while suffering significant medical and psychological challenges, *PSR Paragraphs 69. 70, & 73*, demonstrate that notwithstanding the serious harm that he has done, he can and will be a productive, law abiding citizen.  McMenimen knows that he will never again work in the financial services industry and that he will never restore his reputation, an essential asset in that industry.  He has demonstrated that he has the dedication and energy to meet his obligations to his loyal wife, their sons, his family, and the community, and upon release from BOP custody to start making restitution to his victims.

In conclusion, the agreed sentence would implement the criteria in 18 U.S.C. § 3553(a).  It would reflect the seriousness of the offense, promote respect for the law, provide just punishment; afford adequate deterrence to criminal conduct; protect the public from further

crimes by McMenimen, whose conduct and finances after his release from the BOP will be scrutinized by the probation office and by the IRS, with whom as part of the plea agreement he must cooperate; and provide him with needed medical care and other correctional treatment in the most effective manner.

                Respectfully submitted,

                FREDERICK V. McMENIMEN III
                By His Attorneys,

                /s/ Bjorn Lange
                Bjorn Lange (NHBA #1426)
                Assistant Federal Public Defender
                Federal Defender Office
                The Ralph Pill Building
                22 Bridge Street – 3rd Fl.
                Concord, NH  03301
                (603)226-7360
                Bjorn_Lange@fd.org

Date: February 6, 2015

                /s/ William E. Christie
                William E. Christie
                Shaheen & Gordon (Concord)
                107 Storrs Street
                PO Box 2703
                Concord, NH 03302-2703
                (603)225-7262
                wchristie@shaheengordon.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on February 6, 2015 the above document was served via ECF upon all counsel of record and that a copy will be e-mailed to USPO Sean P. Buckley.

                /s/ Bjorn Lange
                Bjorn Lange